OULD *v.* WASHINGTON HOSPITAL FOR FOUNDLINGS.

1. A., by his last will and testament, admitted to probate June 22, 1864, devised certain lots of ground in the District of Columbia to two trustees, " and the survivor of them, and the heirs, executors, administrators, and assigns of such survivor, in trust, nevertheless, and to and for and upon the uses, intents, and purposes following, that is to say: In trust to hold the said lots of ground, with the appurtenances, as and for a site for the erection of a hospital for foundlings, to be built and erected by any association, society, or institution that may hereafter be incorporated by an act of Congress as and for such hospital, and upon such incorporation, upon further trust to grant and convey the said lots of ground and trust estate to the corporation or institution so incorporated for said purpose of the erection of a hospital, which conveyance shall be absolute and in fee. *Provided, nevertheless,* that such corporation shall be approved by my said trustees, or the survivor of them, or their successors in the trust; and, if not so approved, then upon further trust to hold the said lots and trust estate for the same purpose, until a corporation shall be so created by act of Congress which shall meet the approval of the said trustees or the survivor or successors of them, to whom full discretion is given in this behalf, and, upon such approval, in trust to convey as aforesaid; and I recommend to my said trustees to select an institution which shall not be under the control of any one religious sect or persuasion; and, until such conveyance, I direct the taxes, charges, and assessments, and all necessary expenses of, for, and upon said lots, and every

one of them, to be paid by my executors, as they shall from time to time accrue and become due and payable, out of the residue of my estate." The Washington Hospital for Foundlings was incorporated by an act of Congress, approved April 22, 1870 (16 Stat. 92); and, on the 4th of April, 1872, the trustees under the will conveyed said lots to that corporation in fee. *Held*, 1. That the devise is not invalid for uncertainty, or because it creates a perpetuity. 2. That the provision touching a conveyance by the trustees whenever Congress should create a corporation for foundlings which they approved was only a conditional limitation of the estate vested in them. 3. That the duty with which they were charged was an executory trust, and their conveyance was necessary to and did pass the title.

2. The statute of 43 Eliz., c. 4, was purely remedial and ancillary. It was never in force in the District of Columbia; and the validity of charitable endowments, and the jurisdiction of courts of equity over them, do not depend upon it.

3. The doctrine of charitable uses and trusts discussed, and the authorities bearing upon it cited and approved.

ERROR to the Supreme Court of the District of Columbia.

This is an action of ejectment by the plaintiffs in error, who were plaintiffs below, to recover fourteen lots of ground, being part of square numbered two hundred and seven in the city of Washington. The defendant pleaded not guilty. The case was tried upon the following agreed statement of facts: —

The defendant, the Washington Hospital for Foundlings, admits, —

*First*, That Joshua Peirce, late of the District of Columbia, died on the eleventh day of April, 1869.

*Second*, That he died seised of the real estate set forth and described in the plaintiffs' declaration.

*Third*, That the plaintiffs, Elizabeth C. Ould, Elizabeth C. Beardsley, Samuel Simonton, Abner P. Simonton, David S. Simonton, John E. Simonton, Hannah P. Jackson, Eliza F. Tibbetts, Abner C. P. Shoemaker, and Peirce Shoemaker, are the heirs-at-law, and the only heirs-at-law, of said Peirce.

The plaintiffs admit, —

*First*, That said Peirce, on the fifteenth day of October, 1867, duly executed his last will and testament, commencing as follows: —

"I, Joshua Peirce, of the county of Washington, in the District of Columbia, do make this my last will and testament in manner and form following."

That following this is a revocation of other wills, then a provision for the payment of debts, then several specific devises, and then the fourteenth item, in the following words: —

"Fourteenth, I give, devise, and bequeath all those fourteen certain lots or pieces of ground, part of square numbered two hundred and seven, situate between R and S Streets north and Fourteenth and Fifteenth Streets west, in the said city of Washington, in the District of Columbia; which lots are numbered from number twenty-four to number thirty-seven, inclusive, on a certain plan of subdivision of the said square, registered and recorded in the surveyor's office for the said city, in liber W F, folio 211, and are situate on the east side of the said Fifteenth Street, at the distance of one hundred and sixty feet northward from the north side of the said R Street north, containing together in front on the said Fifteenth Street west one hundred and thirty feet, and in depth eastward between parallel lines two hundred and ninety-four feet and a half inch, more or less, to Johnson Avenue (including in the said depth a twenty-feet-wide alley, laid out through the middle of the said lots), to my friends, William M. Shuster and William H. Clagett, both of the said city of Washington, and the survivor of them, and the heirs, executors, administrators, and assigns of such survivor, in trust, nevertheless, and to, for, and upon the uses, intents, and purposes following, that is to say: In trust to hold the said fourteen lots of ground with the appurtenances as and for a site for the erection of a hospital for foundlings, to be built and erected by any association, society, or institution that may hereafter be incorporated by an act of Congress as and for such hospital, and upon such incorporation upon further trust to grant and convey the said lots of ground and trust-estate to the corporation or institution so incorporated for the said purpose of the erection of a hospital, which conveyance shall be absolute and in fee: *Provided, nevertheless,* that such corporation shall be approved by my said trustees, or the survivor of them, or their successors in the trust; and, if not so approved, then upon further trust to hold the said lots and trust-estate for the same purpose, until a corporation shall be so created by act of Congress, which shall meet the approval of the said trustees, or the survivor or successors of them, to whom full discretion is given in this behalf; and, upon such approval, in trust to convey as aforesaid; and I recommend to my said trustees to select an institution which shall not be under the control of any one religious sect or persuasion; and, until such conveyance, I direct the taxes, charges, and assess-

ments, and all necessary expenses of, for, and upon the said lots, and every one of them, to be paid by my executors, as they shall from time to time accrue and become due and payable, out of the residue of my estate."

That following this is a devise of the "rest, residue, and remainder" of the testator's estate, "real and personal, including his estate called Linnaean Hill," in trust to trustees for the use of the testator's wife's nephew in tail with a devise over.

*Second,* That on the twenty-second day of June, 1869, the said will was duly proved and admitted to probate in the Orphans' Court of the District of Columbia.

*Third,* That on the twenty-second day of April, 1870, Congress passed an "Act for incorporating a hospital for foundlings in the city of Washington," 16 Stat. 92; and that on the fourth day of April, 1872, said Shuster and Clagett, trustees, conveyed the property described in the declaration and the above fourteenth item of the will to the defendant, so incorporated in conformity with the directions of the testator.

The court below found for the defendant, whereupon the plaintiffs brought the case here.

*Mr. Benjamin F. Butler* and *Mr. O. D. Barrett,* for the plaintiffs in error.

The devise was not an immediate gift to a charity, but an executory devise for charitable purposes. 3 Greenl. Cruise on Real Prop. 444, sects. 1, 2; 2 Redfield on Wills, c. 2, sect. 17; Williams on Real Prop. 290, 291; Powell on Devises, 250, 287; *Nightingale* v. *Burrell,* 15 Pick. (Mass.) 104.

It is therefore governed by the same rules as to perpetuities as are executory devises for any other purpose, and is void, as at the death of the testator a possibility existed that it might not vest in the prescribed corporation within twenty-one years, or, at furthest, a life or lives in being and twenty-one years. 1 Jarman on Wills, 233; 2 Redfield on Wills, 571, sect. 14; Williams on Real Prop. 294, 301; 3 Greenl. Cruise on Real Prop. 454, sect. 23; *Everitt* v. *Everitt,* 29 Barb. (N. Y.) 118; *Stephens et al.* v. *Evans, Adm'x,* 30 Ind. 51; *Sears* v. *Russell,* 8 Gray (Mass.), 98; *Phelps* v. *Pond,*

23 N. Y. 69; *Sinnett* v. *Herbert*, L. R. 7 Ch. 240; *Barnes* v. *Barnes*, 3 Cranch, 260; *Brattle Square Church* v. *Grant*, 3 Gray (Mass.), 142; 4 Kent, Com. 267; 1 Jarman on Wills, 221; 4 Cruise, Dig., tit. 32, c. 24, sect. 18; *Nightingale* v. *Burrell*, *supra; Cadell* v. *Palmer*, 1 Ho. of L. Cas. 372; 2 Atkinson on Conveyancing (2d ed.), 264; *Bacon* v. *Proctor*, 1 Turn. & R. 31; *Mackworth* v. *Hinxman*, 2 Keen, 659; *Ker* v. *Lord Dungannon*, 1 Dr. & War. 509; *Commissioners of Charitable Donations* v. *Baroness De Clifford*, id. 245; Lewis on Perpetuities, 169; *Duke of Norfolk* v. *Howard*, 1 Vern. 163; *Welsh* v. *Foster*, 12 Mass. 97.

The devise is void on account of the uncertainty of its object. *Baptist Association* v. *Hart's Ex.*, 4 Wheat. 1; *Coltman et al.* v. *Moore et al.*, 1 McArthur, 197; *Lingan* v. *Carroll*, 3 Har. & M. (Md.) 333; *Dashiell et al.* v. *The Attorney-General*, 5 Har. & J. (Md.) 398; *Dashiell* v. *The Attorney-General ex rel.*, 6 id. 1; *Wilderman* v. *Baltimore*, 8 Md. 551; *Board of Missions of the Presbyterian Church* v. *White's Adm'rs*, 4 Am. Law Reg. 531; *Wheeler* v. *Smith et al.*, 9 How. 76.

A foundling hospital is not a charity. Since the first foundation at Milan, in 787, such institutions have rapidly multiplied in every part of Europe. The waste of human life which they have occasioned, and the injury they have done to public morals, render it probable that they will at no distant period be everywhere suppressed. The statistics of France show that they have produced frightful immorality and mortality, and that it is "not poverty, but luxury, which produces exposures." In England, the entire system of the foundling hospital has been altered. Brande's Dict., vol. i. 925.

*Mr. Walter S. Cox* and *Mr. James M. Johnston, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

This case was submitted to the court below, upon an agreed statement of facts.

The court found for the defendant, and gave judgment accordingly. The plaintiffs thereupon sued out this writ of error. The questions presented for our consideration are questions of law arising upon the will of Joshua Pierce, deceased. The will declares : —

"I give, devise, and bequeath all those fourteen certain lots" (describing fully the premises in controversy) "to my friends, William M. Shuster and William H. Clagett, of the said city of Washington, and the survivor of them, and the heirs, executors, administrators, and assigns of such survivor, in trust, nevertheless, and to and for and upon the uses, intents, and purposes following, that is to say : In trust to hold the said fourteen lots of ground, with the appurtenances, as and for a site for the erection of a hospital for foundlings, to be built and erected by any association, society, or institution that may hereafter be incorporated by an act of Congress as and for such hospital, and upon such incorporation, upon further trust to grant and convey the said lots of ground and trust-estate to the corporation or institution so incorporated for said purpose of the erection of a hospital, which conveyance shall be absolute and in fee : *Provided, nevertheless,* that such corporation shall be approved by my said trustees, or the survivor of them, or their successors in the trust ; and, if not so approved, then upon further trust to hold the said lots and trust-estate for the same purpose, until a corporation shall be so created by act of Congress which shall meet the approval of the said trustees or the survivor or successors of them, to whom full discretion is given in this behalf ; and, upon such approval, in trust to convey as aforesaid ; and I recommend to my said trustees. to select an institution which shall not be under the control of any one religious sect or persuasion ; and, until such conveyance, I direct the taxes, charges, and assessments, and all necessary expenses of, for, and upon said lots, and every one of them, to be paid by my executors, as they shall from time to time accrue and become due and payable, out of the residue of my estate."

The will was duly proved and admitted to probate in the proper court in the District of Columbia, on the 22d of June, 1864. On the 22d of April, 1870, Congress passed " An Act for incorporating a hospital for foundlings in the city of Washington." 16 Stat. 92. On the 4th of April, 1872, Shuster and Clagett, the trustees, conveyed the property to the defendant in error, the Washington Hospital for Foundlings, so incorporated, pursuant to the directions of the will.

The Statute of Wills of Maryland of 1798, which is still in force in the District of Columbia, provides that " no will, testament, or codicil shall be effectual to create any interest or perpetuity, or make any limitation or appoint to any uses not now

permitted by the Constitution or laws of the State."    2 Kilty's Laws of Md., c. 101.

Our attention has been called in this connection to nothing in the Constitution, and to nothing else in the laws of the State, as requiring consideration.    No statute of mortmain or statute like that of 9 Geo. II., c. 36, is an element in the case.

The statute of 43 Eliz., c. 4, was never in force in Maryland.    *Dashiell* v. *Attorney-General*, 5 Har. & J. (Md.) 392. It is not, therefore, operative in the District of Columbia.

The opinion prevailed extensively in this country for a considerable period that the validity of charitable endowments and the jurisdiction of courts of equity in such cases depended upon that statute.    These views were assailed with very great learning and ability in 1833, by Mr. Justice Baldwin, in *McGill* v. *Brown*.    Bright. (Pa.) 346.    An eminent counsel of New York was the pioneer of the bar in 1835 in a like attack.    His argument in *Burr's Executors* v. *Smith*, 7 Vt. 241, was elaborate and brilliant, and, as the authorities then were, exhaustive.    He was followed in support of the same view, in 1844, by another counsel no less eminent, in *Vidal* v. *Philadelphia*, 2 How. 128. The publication, then recent, of the Reports of the British Records Commission enabled the latter gentleman to throw much additional and valuable light into the discussion.    The argument was conclusive.

In delivering the opinion of the court, Mr. Justice Story, referring to the doctrine thus combated, said, "Whatever doubts might, therefore, properly be entertained upon the subject when the case of the Trustees of the Philadelphia Baptist Association was before the court (1819), those doubts are entirely removed by the later and more satisfactory sources of information to which we have alluded."

The former idea was exploded, and has since nearly disappeared from the jurisprudence of the country.

Upon reading the statute carefully, one cannot but feel surprised that the doubts thus indicated ever existed.    The statute is purely remedial and ancillary.    It provided for a commission to examine into the abuses of charities already existing, and to correct such abuses.    An appeal lay to the Lord Chancellor. The statute was silent as to the creation or inhibition of any

new charity, and it neither increased nor diminished the pre-existing jurisdiction in equity touching the subject. The object of the statute was to create a cheaper and a speedier remedy for existing abuses. *The Morpeth Corporation*, Duke on Charitable Uses, 242. In the course of time, the new remedy fell into entire disuse, and the control of the chancellor became again practically sole and exclusive. The power of the king as *parens patriæ*, acting through the chancellor, and the powers of the latter independently of the king, are subjects that need not here be considered. *Fountain* v. *Ravennel*, 17 How. 379 ; 2 Story, Eq. Jur., sect. 1190,

The learning developed in the three cases mentioned shows clearly that the law as to such uses, and the jurisdiction of the chancellor, and the extent to which it was exercised, before and after the enactment of the statute, were just the same.

It is, therefore, quite immaterial in the present case whether the statute was or was not a part of the law of Maryland. The controversy must be determined upon the general principles of jurisprudence, and the presence or absence of the statute cannot affect the result.

Two objections were urged upon our attention in the argument at bar.

1. That there is no specification of the foundlings to be provided for, and that therefore the devise is void for uncertainty.

In this connection, it was suggested by one of the learned counsel for the plaintiffs in error that a hospital for foundlings tends to evil, and ought not to be supported.

2. That the devise is void because it creates a perpetuity.

The Statute of Elizabeth, before referred to, names twenty-one distinct charities. They are —

1. For relief of aged, impotent, and poor people. 2. For maintenance of sick and maimed soldiers. 3. Schools of learning. 4. Free schools. 5. Scholars in universities. 6. Houses of correction. 7. For repair of bridges; 8, of ports and havens; 9, of causeways; 10, of churches; 11, of sea-banks; 12, of highways. 13. For education and preferment of orphans. 14. For marriage of poor maids. 15. For support and help

of young tradesmen; 16, of handicraftsmen; 17, of persons decayed. 18. For redemption or relief of prisoners or captives. 19. For ease and aid of poor inhabitants concerning payment of fifteens. 20. Setting out of soldiers; 21, and other taxes.

Upon examining the early English statutes and the early decisions of the courts of law and equity, Mr. Justice Baldwin found forty-six specifications of pious and charitable uses recognized as within the protection of the law, in which were embraced all that were enumerated in the statute of Elizabeth. *McGill* v. *Brown*, *supra*. It is deemed unnecessary to extend the enumeration beyond those already named.

A charitable use, where neither law nor public policy forbids, may be applied to almost any thing that tends to promote the well-doing and well-being of social man. Perry on Trusts, sect. 687.

In the Girard Will Case, the leading counsel for the will thus defined charity: " Whatever is given for the love of God, or the love of your neighbor, in the catholic and universal sense, — given from these motives and to these ends, free from the stain or taint of every consideration that is personal, private, or selfish." Mr. Binney's Argument, p. 41.

The objection of uncertainty in this case as to the particular foundlings to be received is without force. The endowment of hospitals for the afflicted and destitute of particular classes, or without any specification of class, is one of the commonest forms of such uses. The hospital being incorporated, nothing beyond its designation as the donee is necessary. Who shall be received, with all other details of management, may well be committed to those to whom its administration is intrusted. This point is so clear, that discussion or the citation of authorities is unnecessary. Cases illustrating the subject in this view are largely referred to in Perry on Trusts, sect. 699, and in the note to sect. 1164, Story, Eq. Jur. See also id., sects. 1164, 1190, and notes.

Hospitals for foundlings existed in the Roman Empire. They increased when Christianity triumphed. They exist in all countries of Europe, and they exist in this country. There are no beneficiaries more needing protection, care, and kind-

ness, none more blameless, and there are none who have stronger claims than these waifs, helpless and abandoned upon the sea of life.

A perpetuity is a limitation of property which renders it inalienable beyond the period allowed by law. That period is a life or lives in being and twenty-one years more, with a fraction of a year added for the term of gestation, in cases of posthumous birth.

In this case, the devise was in fee to two trustees and to the survivor of them. They were directed to convey the premises to an eleemosynary corporation for foundlings, whenever Congress should create one which the trustees approved. If the will had been so drawn as itself to work the devolution of the title upon the happening of the event named, the clause would have been an executory devise. If the same thing had been provided for in a deed *inter vivos*, a springing use would have been involved; and such use would have been executed by the transfer of the legal title, whenever that occurred. The testator chose to reach the end in view by the intervention of trustees, and directing them to convey at the proper time. This provision in the will was, therefore, a conditional limitation of the estate vested in the trustees, and nothing more. Their conveyance was made necessary to pass the title. The duty with which they were charged was an executory trust. Amb. 552. The same rules generally apply to legal and to equitable estates. They are alike descendible, devisable, and alienable. *Croxall* v. *Sherrerd*, 5 Wall. 268. When such uses are consummated and no longer *in fieri*, the law of perpetuity has no application. *Franklin* v. *Armfield*, 2 Sneed (Ky.), 305; *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Perrin* v. *Carey*, 24 How. 465. It is intended that what is given shall be perpetually devoted to the purpose of the giver.

In the case last named, the will expressly forbade for ever the sale of any part of the devised property. This court held the inhibition valid. Of course, the legislature, or a court of equity under proper circumstances, could authorize or require a sale to be made. *Stanley* v. *Colt*, 5 Wall. 119.

There may be such an interval of time possible between the gift and the consummation of the use as will be fatal to the

former.  The rule of perpetuity applies, as well to trust as to legal estates.  The objection is as effectual in one case as in the other.  If the fatal period may elapse before what is to be done can be done, the consequence is the same as if such must inevitably be the result.  Possibility and certainty have the same effect.  Such is the law upon the subject.

A devise to a corporation to be created by the legislature is good as an executory devise.  A distinction is taken between a devise *in præsenti* to one incapable, and a devise *in futuro* to an artificial being, to be created and enabled to take.  Angell & Ames on Corp., sect. 184 ; *Porter's Case*, 1 Co. 24; *Attorney-General* v. *Bonyer*, 3 Ves. 714; *Inglis* v. *The Trustees of the Sailor's Snug Harbor*, 3 Pet. 99; *Sanderson* v. *White*, 18 Pick. (Mass.) 328.

At common law, lands may be granted to pious uses before there is a grantee competent to take.  In the mean time, the fee will lie in abeyance.  It will vest when the grantee exists. *Town of Pawlet* v. *Clark*, 9 Cranch, 292.  See also *Beatty* v. *Kurtz*, 2 Pet. 566, and *Vincennes University* v. *Indiana*, 14 How. 268.

Charitable uses are favorites with courts of equity.  The construction of all instruments where they are concerned is liberal in their behalf.  *Mills* v. *Farmer*, 19 Ves. 487 ; *McGill* v. *Brown, supra ;* Perry on Trusts, sect. 709.  Even the stern rule against perpetuities is relaxed for their benefit.

" But a gift may be made to a charity not *in esse* at the time, — to come into existence at some uncertain time in the future, — provided there is no gift of the property in the first instance, or perpetuity in a prior taker."  Perry on Trusts, sect. 736.

Archbishop Secker, by his will, gave £1,000 to trustees for the purpose of establishing a bishop in the British possessions in America.  Mansfield, of counsel, insisted that, " there being no bishop in America, or the least likelihood of there ever being one," the legacy was void, and must fall into the residue. Lord Chancellor Thurlow said, " The money must remain in court till it shall be seen whether any such appointment shall take place."  *Attorney-General* v. *The Bishop of Chester*, 1 Bro. C. C. 444.

A testator devised his real estate to trustees, in trust, with

the rents and profits to purchase ground in Cambridge, proper for a college, and to build all such structures as should be necessary for that purpose (the college to be called "Downing College"), and to obtain a royal charter for founding such college and incorporating it by that name, in the University of Cambridge. The trustees were to hold the premises devised to them "in trust for the said collegiate body and their successors for ever." The devise was held to be valid. *Attorney-General* v. *Downing*, Amb. 550.

A sum of money was bequeathed to erect a blue-coat school and establish a blind asylum, with direction that land should not be purchased, and the expression of an expectation that lands would be given for the charities. In answer to the suggestion at the bar that the application of the fund might be indefinitely postponed, it was said, on the other side, that the court would fix a time within which the gift must take effect; and 2 Ves. 547, and 3 Atk. 806, were cited in support of the proposition.

The Vice-Chancellor said the cases of Downing College and the *Attorney-General* v. *The Bishop of Chester* seemed to be authorities against the objection, but that the point did not arise in the case before him. It was obviated by a codicil to the will, which appears to have been overlooked by the counsel on both sides. *Henshaw* v. *Atkins*, 3 Madd. 167. See also *Philpot* v. *St. George's Hospital*, 6 Ho. of L. Cas. 359. In this case, as in the one we are considering, the trustee was required to approve the designated charity before paying over the money.

A testator left a sum of money to build and endow a future church. The question was raised, but not decided, whether the court would hold the fund for an indefinite time. The Lord Chancellor said: "A gift to a charitable purpose, if lawful, is good, although no object may be in existence at the time. This was expressly decided in *Attorney-General* v. *Bishop of Chester*, where the gift was for establishing a bishop in his Majesty's dominions in America," &c. *Sennet* v. *Herbert*, Law Rep. 7 Ch. 237.

A testatrix, by her will, directed, among other things, that when and as soon as land should be given for the purpose as

thereinafter mentioned, almshouses should be built in three specified places.   She further directed that the surplus remaining, after building the almshouses, should be appropriated for making allowances to the inmates.   It was held that the fund was well given, for that the gift to charity was not conditional and contingent, but that there was an absolute immediate gift to charity, the mode of execution only being made dependent on future events.   *Chamberlain* v. *Brocket,* 8 Law Rep. Ch. 1872–73, p. 206.   The bearing of this authority upon the case in hand needs no remark.   See also *McIntyre Poor School* v. *Zanesville Canal Co.,* 9 Ohio, 203, and *Miller* v. *Chittenden,* 2 Iowa, 315; s. c. 4 id. 252.   These were controversies relating to real estate.   The same point as here was involved.   Both gifts were sustained.   The judgments are learned and able.

The last of this series of cases to which we shall refer is an adjudication by this court.   The testator gave the residue of his estate, embracing a large amount of real property, to the Chancellor of the State of New York, the mayor and recorder of the city of New York, and others, designating them only by their official titles, and to their respective successors in office for ever, in trust to establish and maintain an asylum for aged, decrepit, and worn-out sailors, the asylum to be called " The Sailors' Snug Harbor."   If the trustees so designated could not execute the will, they were to procure from the legislature an act of incorporation, giving them the requisite authority.   Such an act was passed, and the institution was established.   The heir-at-law sued for the property.   This court held that the official designations were *descriptio personarum,* and that the trustees took personally.   See Bac. Abr., Grant C; *Owen* v. *Bean,* Duke on Char. 486; *Wellbeloved* v. *Jones,* 1 Sim. & St. 40.   Nothing was said as to the capacity of the successors to take.   A special act of incorporation was deemed necessary. There being no particular estate to support the final disposition, the latter was held to be an executory devise.   This court decided that the gift was valid.   That upon the creation of the corporation the title to the property became vested in it, or that the naked legal title was held by the heir-at-law in trust for the corporation.

The points of analogy between that case and this are obvi-

ous. There, as here, a future corporation was necessary to give the devise effect. There, as here, there was a possibility that such a corporation might never be created. In both cases the corporation was created, and the intention of the testator was carried into full effect. It is a cardinal rule in the law of wills that courts shall do this whenever it can be done. Here we find no impediment in the way. The gift was immediate and absolute, and it is clear beyond doubt that the testator meant that no part of the property so given should ever go to his heirs-at-law, or be applied to any other object than that to which he had devoted it by the devise here in question.

There are numerous other authorities to the same effect with those last cited. The latter are abundantly sufficient to dispose of this case. It is, therefore, unnecessary to extend this opinion by pursuing the subject further.

*Judgment affirmed.*