McALPIN (BOYD v.). See Case No. 1,748.

McARDLE (UNITED STATES v.). See Case No. 15,653.

---

## Case No. 8,659.

McARTHUR et al. v. ALLEN et al.

[3 Cin. Law Bul. 471.]

Circuit Court, S. D. Ohio. 1878.

WILLS — DEVISE IN TRUST — FEE TAIL — RULE IN SHELLEY'S CASE—ESTATE TO PERSONS NOT IN ESSE—OHIO STATUTE.

[1. A testator devised real estate to be held until the last-born child of any one of the sons or daughters of the testator should become of age, when it should be divided between all his grandchildren per capita, the issue of such as are dead taking per stirpes, the rents and profits meanwhile to be divided in certain proportions among the devisees. *Held*, that the will does not create an estate in fee tail, and consequently is not within the prohibition of act of legislature of Ohio of December 17, 1812 (1 Swan. & C. Rev. St. p. 550).]

[2. The rule in Shelley's Case will be *held* not to apply in a ·case where there are qualifying and explanatory expressions in a will showing clearly the intent of the testator otherwise.]

[3. A devise by a testator of an estate which, upon the happening of a certain contingency, is to vest in, and be divided per capita among, all his grandchildren at the time living, and to the issue of the dead, taking per stirpes, is not void as to issue born of a grandchild not in esse at the death of the testator, under a statute which prohibits the granting estates to persons not in esse.]

[This was a bill by Allen Campbell McArthur and others against William Allen and others. Heard on demurrer to the bill.]

SWAYNE, Circuit Justice. This is a case in equity. A part of the defendants have demurred to the bill. The bill is founded upon the will. of the late Governor Duncan McArthur of Ohio. The demurrer challenges the validity of certain parts of it which the bill seeks to enforce. The will was executed on the 30th day of October. 1833, and was admitted to probate on the 16th of May, 1839. The testator died a few days before the probate. The provisions of the will thus drawn in question, stripped of unnecessary verbiage and expressed in untechnical language, are as follows:

Item 17.—The testator's lands in Ross and Pickaway counties were not to be sold. Those lands and the lands devised to his

wife, after her death, were to be leased by the executors to the best advantage for improvements or money rents until the youngest or last-born grandchild the testator then had or might thereafter have, being the child of his son Allen C. or James McD., or his daughter Effie Eliza Ann or Mary, who might live to be twenty-one years old, arrive at that age.

Item 18.—After the moneys before devised should have been paid and deducted from the rents, the residue of the rents, and the dividends from all stocks belonging to the estate of the testator at his death or thereafter purchased pursuant to the will, were to be divided annually among his children and grandchildren who were of the age of twenty-one years when such a division was made. Until the youngest grandchildren should arrive at the age, such annual division was to be made between the said Allen C., James McD., Effie Eliza Ann and Mary, and their children, share and share alike, per capita, the grandchildren respectively to have a share as soon as they reached the age of twenty-one, and not before. That in case of the death of either of the sons or daughters named leaving a child or children under the age of twenty-one years, such. child or children should take, per stirpes, for their education and maintenance, the dividends which the parent if living would have been entitled to receive. When such child or children should be twenty-one, he, she, or they should no longer take per stirpes, but thereafter per capita. The coming to that age of one of such children was not to prevent those still under it for continuing to take per stirpes the full share of their deceased parent. .

Item 19.—After the decease of all the said children of the testator, and as soon as the youngest of said grandchildren arrived at the age of twenty-one years, all the lands in the counties of Ross and Pickaway not otherwise disposed of, and all the other lands of the testator then unsold, if any, were to "be inherited and equally divided between" the said "grandchildren per capita," they being "the lawful issue" of the said "sons and daughters, Allen C., James McD., Effie Eliza Ann and Mary, for them and their heirs forever, to have and to hold or to sell and dispose of the same at their will and pleasure;" and in like manner all the stocks belonging to "the estate, whether invested before or after" the death of the testator, were to be "at the same time equally divided among the said grandchildren share and share alike per capita." In the next paragraph the testator declared, "but it is to be understood to be my will and direction that if any grandchild aforesaid shall have died before said final division is made, leaving a child or children. lawfully begotten, such child or children shall take and receive per stirpes (to be equally divided between them) the share of my said estate, both real and personal, which the deceased parent of such child or children

would have been entitled to have and receive, if living at the time of such final distribution." All the children and grandchildren were prohibited from assigning, mortgaging, or otherwise transferring or incumbering their respective shares of the annual dividends, and all instruments executed by them for either purpose it was declared should be void. There was a like prohibition and declaration with respect to the lands and stocks before their final distribution, as provided by the will. In making such distribution of the lands, the executors were to execute several deeds in partition to the respective parties, and to no other person whomsoever. The legal title to the lands was so vested in the executors and their heirs in trust for the purpose of the will until final division and partition were made and no longer. In making the final division of the stocks, the executors holding them in trust were required to assign and transfer to each grandchild, or his or her legal representative, the share of such stocks coming and belonging to such grandchild or representative, and the receipt of such grandchild or representative was alone to be a discharge of the executors.

When the bill was filed all the said children had died. Allen C. McArthur, one of the complainants, and the son of said Allen C. deceased, is the youngest grandchild, and arrived at the age of twenty-one years on the fourth of March, 1875. Of the grandchildren two had died before the youngest one came of age. (1) Duncan Coons, son of the testator's daughter Effie. He died a minor and unmarried, several years before the filing of this bill. (2) Nancy Medary, daughter of the testator's daughter Mary. She died about ten years before this bill was filed, intestate, and leaving three children still living. They are the great-grandchildren of the testator, Duncan McArthur, and were born since the making of the will and since his death.

Such are the scheme and portions of the will, and such the facts before us for consideration. The bill is confined to the real estate thus devised. It is silent as to the personalty. The parties demurring rely upon the following statute, passed December 17, 1812 (1 Swan & C. Rev. St. p. 550): "An act to restrict the entailment of real estate. Section 1: Be it enacted by the general assembly of the state of Ohio, that from and after the taking effect of this act, no estate in fee-simple, fee-tail, or any less estate in lands or tenements, lying in this state, shall be given or granted by deed or will to any person or persons but such as are in being at the time of the making of such deed or will. And that all estates given in tail shall be and remain an absolute estate in fee-simple to the issue of the first donee in tail. The act to take effect and be in force from and after the first day of June next." Upon looking into the statute analytically, it will be observed: I. That no estate in

lands can be deeded or devised except (1) to persons in being at the time of making the deed or will, or (2) to the immediate issue, or (3) to the immediate defendants of such persons. II. Every entailed estate is made an absolute estate in fee-simple to the issue of the first donee in tail. In our further remarks we shall give our views touching such of the points made by the opposing counsel as we deem it material to consider without formally restating them. This, without clearness, will conduce to brevity.

The case, as it is presented by the demurrer, turns upon the statute. That statute implies clearly that before its enactment the title to lands might have been transferred in the ways forbidden and thereafter made unlawful. What is thus implied is as effectual as if it were expressed. U. S. v. Babbit, 1 Black [66 U. S.] 61. The act is a restraining and not an enabling statute. 11 Ohio St. 173. An estate tail is one limited to a person and the heirs of his body. The limitation may be to all such heirs, or to certain specified heirs coming within that description, to the exclusion of others. In one case the entail is general and in the other special. The terms "heirs of his body," or their clear equivalent, are indispensable to the creation of such an estate. 2 Cooley, Bl. 113. As there is a remainder over to the specified heirs, and reverter to the donor upon the failure of such heirs, three things are necessary to the creation of such an estate: (1) There must be a particular estate. (2) The remainder must pass out of the grantor at the creation of the particular estate. (3) The remainder must vest in the grantee during the continuance of the particular estate or eo instante that it determines. The destruction of the particular estate before the vesting of the remainder is fatal to the grant. Hence in the cases of entail it was not unusual to interpose trustees for the preservation of the particular estate until the birth of an heir entitled to take per formam doni. Poor v. Considine, 6 Wall. [73 U. S.] 477; Croxall v. Shererd, 5 Wall. [72 U. S.] 284. In the construction of wills the cardinal and controlling consideration is the intent of the testator. If that can be ascertained, and there be no legal impediment, it is conclusive; everything else gives away before it. It is clear this will did not create an estate tail; no such purpose animated the mind of the testator.

Passing by other points of difference between such an estate and those constituted by the will, it is sufficient to note that the testator declared that when the final distribution per capita took place, and the deeds were executed accordingly, the grandchildren being the first donees in each case, should take their estates "for them and their heirs forever, to have and to hold, or to sell or dispose of the same at their will and pleasure." There was no attempt to make any special limitation. It was only in the event of a grandchild being disabled by death from taking that the further provision was made "that if any grandchild aforesaid shall have died before said division is made, leaving a child or children lawfully begotten, such child or children shall take and receive, per stirpes (to be equally divided between them) the share of my said estate, both real and personal, which the deceased parent of such child or children would have been entitled to have and receive if living at the time of such final distribution." Here again it is to be observed there is no attempt to limit the property over to the heirs of the bodies of such children. So much of the statute as relates to estates tail may therefore be laid out of view. It has no application to the case, and cannot, therefore, be a factor of any value in our examination of the subject before us.

The rule in Shelley's Case, as stated by Preston and Chancellor Kent,—the latter modifying the definition of the former,—is as follows: "When a person takes an estate of freehold, legally or equitably, under a deed, will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons to take in succession, from generation to generation, the limitation to the heirs entitled the ancestor to the whole estate." Prest. Est. 263, 418; 4 Kent, Comm. 215. The rule is one of property, and not of construction. Whenever it can be fairly inferred from explanatory and qualifying expressions in a will that the import of the technical terms employed is contrary to the real intent of the testator, the latter must prevail. Daniel v. Whartenby, 17 Wall. [84 U. S.] 643. Here neither the language of the devise nor the obvious aim and purpose of the devisor bring the case within the rule. We think the intent was clearly otherwise. The estate of the first devisees, in whom any title was vested, was, by the terms of the will, to be a fee-simple absolute. The estate intended for the deceased parents was given to their children. According to the will, the latter took by purchase and not by descent. The rule therefore has no application.

Nor can we hold that the estates given to the grandchildren were estates in remainder which vested in right as to those in esse at the death of the testator, and in those after-born at their birth, but to take effect in possession when the youngest should arrive at the age of twenty-one,—all the said children of the testator being dead,—the estate to determine as to the grandchildren, if any they had, and, if there were none, then to the grandchildren who should be living at that time. There is nothing in the will which warrants this view. On the

contrary, the will gave the grandchildren no right·or interest touching the real estate until the time arrived and the events occurred which required the final division to be made. In the meantime the income of the estate, from both the realty and personalty, was to be divided annually per capita among the said children of the testator and the said grandchildren who were twenty-one at the time of such divisions. Where either of the granchildren was dead, his or her children, if there were any, were to take per stirpes the portion, both of the real and personal estate, which would have belonged to the deceased if living at the time of the final division. In the meantime nothing was given to such children from the income of the estate or from any other source.

A weighty reason for applying the doctrine here in question in many cases is that otherwise, if the devisee died before the time specified, leaving children, they would be wholly cut off from the estate, and left unprovided for, which it was presumed could not be according to the intent of the testator. Poor v. Considine, 6 Wall. [73 U. S.] 478. Here the testator guarded against the influence of this consideration by providing expressly that, while all the grandchildren should take per capita, the children of a grandchild, who could not take by reason of death before the executors were authorized and required to convey, were to receive per stirpes the share to which their parent would have been entitled if living at the time prescribed for vesting the titles in those clothed with the right to receive them. The will seems to have been the work of a careful and accurate legal mind.

Estates legal and equitable, with a few exceptions not necessary to be adverted to in this case, are governed by the same rules. They are alike alienable, descendible, and devisable, and barable by the acts of the parties and by matter of record. Croxell v. Shererd, 5 Wall. [72 U. S.] 284. The general rule is that a trust estate terminates when the purposes of the trust have been answered, "and, notwithstanding the devise to the trustees and their heirs, they take only a chattel interest when the trust does not require an estate of higher quality." Poor v. Considine, 6 Wall. [73 U. S.] 471. In this case the legal title was vested in the executors in trust, to be held until the youngest grandchild reached the age of twenty-one years, and the children named were dead, and then to be conveyed according to the directions of the will. The trust estate was therefore a freehold. An executory devise.is such a disposition of real property by will that no estate vests at the death of the devisor, but only on a future contingency. It differs from an estate in remainder in three material points: (1) It needs no particular estate to support it. (2) A fee-simple or other less estate may be limited by it after a fee-simple. (3) A remainder may be limited of a chattel interest after a particular estate for life in the same property. It seems to us entirely clear that the grandchildren, when the youngest one reached the age of twenty-one years,—the children all being dead,—took each an executory devise. The estate so taken was an equitable fee-simple to be turned into a legal fee by the required conveyance from the executors at that time. The same remarks apply with respect to the estate given to the children of a grandchild who died before such conveyance was required to be made. The death of the children, and the arrival of the youngest grandchild at the age specified, were conditions precedent to the vesting of any right or title in either of the devisees. We agree that the final disposition of the estate must be such as will inevitably occur within the sanctions of the statute. If it may possibly be within the prohibitions prescribed, it is void. Potentiality and·certainty are in the eye of the law, in such cases, the same thing. Ould v. Washington Hospital for Foundlings, 95 U. S. 303. The facts as they may subsequently occur are, in this view, immaterial. The English law of perpetuities, and the New York statute upon the subject, are so different from the statute of Ohio, that adjudications under the former are of little value as to cases arising under the latter. The limitation in the foreign law in both cases is as to time. Here it is as to persons. There is no difficulty in this case arising from the devises to the grandchildren. Whether they were born before or after the making of this will is immaterial. In the former case they were in being at that time, and in the latter they were the children of persons then in being. Devises to both are expressly sanctioned by the statute. But it is obvious that children might be born to a grandchild not in esse when the will was made, and the grandchild be deceased, leaving such children when all the children named of the testator were dead, and the youngest grandchild attained to the age of twenty-one years. The bill informs us that·such were the facts with respect to Mrs. Mary Medary, the testator's grandchild, born of his daughter Mary. Is the will valid as to her children, the great-grandchildren of the testator?

In order to solve properly this question, we must recur to the statute other than that part of it which relates to estates tail. The latter has already been considered and held to have no application, there being no such estate created by the will. The other part of the statute, as remarked in our analysis, prohibits deeds and wills except to persons in being when the deed or will is made, or their immediate issue or their immediate descendants. The phrase "persons in being" needs no remark. "Immediate issue" means "children." Turley v. Turley, 11 Ohio St.

173. "Immediate descendants" "includes all to whom under the statute of descents an estate would have descended immediately from the particular persons whose descendants they, by the will are required to be." Turley v. Turley, supra. The children of a deceased grandchild here are next in the line of descent after their parent from the testator's child whose descendants the statute requires them to be. This, according to the authority cited, brings them within the category of the statute touching "immediate descendants," and within the permission given by the statute to deed or devise to persons belonging to that class. A brief analysis of Turley v. Turley will set analogies of that case to the one in hand in a clear light. There the testator devised the real estate to F., an unmarried daughter, for life; remainder at her death to her children then living, and the descendants of those children who might be dead, to be divided equally per stirpes. F. married, and had thirteen children. At her decease ten only were living, two had pre-deceased, leaving issue, and one without issue. It was held that the devise to the children of the predeceased children was not in conflict with the statute. That there was an intervening life-estate in one case, and an intervening trust estate in the other, with respect to the grandchildren, is immaterial. The legal position and rights of the children of a deceased grandchild of the testator were identical to both cases. As to them, the point of remoteness arising under each will was exactly the same. The judgment of the court in Turley v. Turley is binding upon us as if the points decided were a part of the statute. It is our duty to administer the law in this litigation in all respects as if we were sitting here as a local court of the state. Stevenson v. Evans, 10 Ohio St. 306, has also an important bearing upon this case. A testator gave property to two daughters and two grandsons for life, and declared that the portion in which each had a life-estate shall descend, and pass "absolutely, unconditionally and in fee-simple respectively to the children of each lawfully begotten of the body of each, or the children or child lawfully begotten of the body of such child or children." Cross-remainders (not necessary to be particularly adverted to), upon several contingencies were provided for. The last devise was held to be valid. The court said: "The testator had undoubtedly a right to provide for persons who might be in being at the time of the death of the tenants for life. He had the right to give the property to the children of such tenants, living at the time of their death, though not born at the time the will took effect. In the event of the death of any such children before the termination of the life estate, leaving children, he had a right

to substitute the latter in the place of their parents. It is not, as appears to be supposed by counsel, a substitution of a remote class of unborn children, but of children whose parents having died before the termination of the life-estate, must under the designation of the child or children of such parents, be then known and determined. Strike out the phrase "life-estate" from the passage we have quoted and insert in its place "particular estate" (we refer to the estate vested in trust in the executors), and its language would be as well applicable to this case as to the one in which it was expressed. It will be observed that in Turley v. Turley, Stevenson v. Evans, and in this case, the ultimate devisees were alike the immediate descendants of the person in being when the will was made—that if no will had been made by the testator or by immediate devises, a portion of the property would have come under the statute of descent directly to them; and that their substitution in place of their deceased parents did not and could not for a moment delay the final disposition of the property under and pursuant to the will. They take by the substitution exactly when and what the parent would take if living. The result as to perpetuity would have been exactly the same if the substitutionary clause had been omitted from the will. To hold it void would involve the sacrifice of substance to form. Here the intention of the testator is indisputably clear. We can see no sufficient reason why it should be defeated. The result of the two cases referred to is that the statute is not to be disjunctively construed. This must be so, or otherwise the solecism would follow that while there could be provision made for those in the last category designated, there could be none at the same time for those in the prior ones. There is no restraint by the statute but what is expressed. We can interpolate none.

Several points not noticed were pressed upon our attention with learning and great ability by the counsel who argued in support of the demurrer. It was our intention fully to discuss them. The length which this opinion has already reached, admonishes us to draw to a close. We have felt the less hesitation in coming to the conclusion we have indicated, because, were it different, and our judgment should be reversed on appeal, the case would have to be remanded for trial in its other aspect, and there might be a second appeal. This would involve a delay of several years in its final determination. As it is, the whole case can go up at the same time. But one appeal will be necessary, and the judgment of the supreme court thereupon will be final and conclusive. The demurrer is overruled, and leave will be given to the defendants who filed it to answer the bill.