DUGGAN et al. v. SLOCUM.

(Circuit Court of Appeals, Second Circuit.  January 25, 1899.)

No. 41.

**1. CHARITIES—FAVORABLE CONSTRUCTION OF CHARITABLE TRUSTS.**

Trusts for public charitable purposes are favored in equity, and will be upheld where, under the same circumstances, private trusts would fail.

**2. SAME—VALIDITY OF TRUST—RULE AGAINST PERPETUITIES.**

A provision of a will creating a trust for public charities, which directed the trustees to invest the fund, and permit the income to accumulate for a term of 10 years, or more, in their discretion, is not void as in violation of the rule against perpetuities, where the entire fund is an absolute and unconditional gift to charity, and there is no gift meanwhile to or for the benefit of a private person, as any unreasonable exercise of the discretion given the trustees would be corrected by the courts.

**3. SAME—DEFINITENESS AS TO PURPOSE AND BENEFICIARIES.**

A bequest in trust for the establishment of a public library in a town and a Roman Catholic protectory or asylum for boys in the diocese, both being charities of a well-known and general character, is not void for indefiniteness, either as to the charities or the beneficiaries, because the making of the rules by which the charities are to be governed, and for the selection of the persons to be benefited, is left to the discretion of the trustees.

Appeal from the Circuit Court of the United States for the District of Connecticut.

John C. Donnelly and C. Walter Artz, for appellants.

John O'Neill, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge.  John `H. Duggan, of Waterbury, Conn., a priest of the Roman Catholic Church, who had never married, died on November 10, 1895, leaving a last will and testament, which was duly proved, and was approved by the probate court for the district of Waterbury.  In this will he gave two legacies for religious or charitable purposes, and the residue of his property in the manner following:

"Fourth. All the rest, residue, and remainder of my estate, both real and personal, and wheresoever situated, I give, devise, and bequeath to my executors hereinafter named, in trust, however, for the following purposes, viz.: One-half to be used for the purpose of establishing and maintaining a library and reading room in connection with St. Patrick's parish, in said Waterbury, or in whatever part of said Waterbury may be deemed by my said executors most suitable and convenient for the general public; and one-half for the purpose of establishing or maintaining a Roman Catholic protectory for boys, in said diocese of Hartford; it being my will that the personal estate and the rents accruing from any real estate of which I may die possessed be invested in safe securities for a term of ten years or more, at the discretion of my said executors.  I also will that the management and disposal of my real estate be at the discretion of my said executors.

"Fifth. I name and appoint the Rt. Rev. Michael Tierney, of Hartford, Conn., and Hon. William C. Robinson, of New Haven, Conn., executors of this, my last will and testament."

Bishop Tierney and Mr. Robinson declined the executorship, whereupon Rev. William J. Slocum, of Waterbury, was appointed administrator with the will annexed.

Hugh Duggan, a citizen of the state of Michigan, and William Duggan, an alien, were the brothers, and Ann Enright, an alien, was the sister, of Father Duggan, and the three are his next of kin. This bill in equity was brought by the named brothers and sisters against Mr. Slocum, as administrator, before the circuit court for the district of Connecticut, to obtain a decree that the provisions of the residuary clause of the will are void, and that in respect to the property mentioned therein John H. Duggan died intestate. The estate had not been settled, and no successors in the trusteeship had been appointed, when the suit was brought. The record is silent in regard to the amount of the estate, except that the bill avers that the amount to be disposed of under the residuary clause is "twenty thousand dollars and upwards." To this bill a demurrer was filed, which was sustained by the circuit court, upon the ground of the validity of the fourth clause, and the bill was dismissed. 83 Fed. 244.

The statute of Connecticut in regard to charitable uses was passed in 1684, but did not appear in the printed statutes until the Revision of 1702, and therefore has been generally called "the Statutes of 1702." Adye v. Smith, 44 Conn. 60. It has been uniformly regarded by the courts of that state as a statute of importance, because, inasmuch as it declared the fixed purpose of the state to preserve estates for charitable uses in accordance with the intent of the grantor, it was an instruction to the courts to enforce such gifts accordingly. It is as follows:

"Sec. 2951. All estates that have been or shall be granted for the maintenance of the ministry of the gospel, or of schools of learning, or for the relief of the poor, or for the preservation, care, and maintenance of any cemetery, cemetery lot, or of the monuments thereon, or for any other public and charitable use, shall forever remain to the uses to which they have been or shall be granted, according to the true intent and meaning of the grantor, and to no other use whatever."

The statute which had existed in Connecticut in regard to perpetuities was repealed before the testator's death, and no statute now exists on the subject. The rule of the common law, which limits the inalienabilty of an estate to a life or lives in being at the death of the testator and 21 years afterwards, is now the rule in that state.

The special demurrer raises a number of legal questions in regard to the jurisdiction of a federal court over a decedent's estate at this stage in its progress of settlement in the probate court which are worthy of consideration, but we shall only look at the vital questions arising under the fourth clause of the will, which are whether its provisions are void either because the beneficial enjoyment of the charities may be postponed for a period which is styled "remoteness," or because the objects of the charities and the beneficiaries are too indefinitely stated. By the residuary clause an immediate and unconditional gift of the estate is made to trustees, to be used by them in the establishment and maintenance of two distinct charities. Their title is burdened with no conditions. They are not to hold it until some other person appears, who may wish to establish

.these charities, or until a corporation is formed, or until a certain amount of money is contributed, but the gift is absolute, and they can have the permanent control of the charities, subject to the pro- .vision that the income is to accumulate for at least 10 years, "or ·more," at their discretion. This discretionary provision in regard to accumulation makes the gift obnoxious to criticism in the mind of the complainants. "A perpetuity is a limitation of property which renders it inalienable beyond the period allowed by law. That period is a life or lives. in being and twenty-one years more, with a fraction of a year added for the time of gestation in cases of post-humous birth." Ould v. Washington Hospital, 95 U. S. 303. A sec-ondary meaning is "an interest which will not vest till a remote period" (Gray, Perp. § 140); and the complainants assert that the beneficial in-terest in this fund may not be enjoyed by the people of Waterbury, or the boys of the diocese of Hartford, for a remote period, if the trustees should neglect or decline to establish the charities; and that, therefore, the entire gift is void. It is true that the time be-fore a gift can take beneficial effect may be so remote as to avoid the gift. "There may be such an interval of time possible between the gift and the consummation of the use as will be fatal to the former. The rule of perpetuity applies to trust as well as to legal estates." Ould v. Hospital, supra. The validity of this class of bequests de-pends upon the law of the state of the testator; but the law of Con- ·necticut, as will hereafter be seen, is that of England and of the states of this country generally, except where special statutes have created a peculiar system, and by this general law "trusts for public charitable purposes are upheld under circumstances under which private trusts would fail." Russell v. Allen, 107 U. S. 163, 2 Sup. Ct. 327; Woodruff v. Marsh, 63 Conn. 125, 26 Atl. 846. Charities are favored; the "stern rule against perpetuities is relaxed for their benefit"; and where the gift is made directly in trust for a charity, although the beneficial effect of the ·gift may be postponed for a longer period than the strict rule against perpetuities permits, pro- vided there is no gift meanwhile to or for the benefit of a private corporation or person, .courts of equity will declare the gift valid, if they can see a reasonable prospect of the consummation of the charitable purpose. In Russell v. Allen, supra, it is declared as a consensus of the cases "that a gift in trust for a charity not existing at the date of the gift, and the beginning of whose existence is un- .certain, or which is to take effect upon a contingency that may prob- ably not happen within a life or lives in being and twenty-one years afterwards, is valid, provided there is no gift of the property mean-while to or for the benefit of any private corporation or person." ·Attorney General v. Downing, Amb. 550; Sinnett v. Herbert, L. R. 7 Ch. 237; Chamberlayne v. Brockett, 8 Ch. App. 206; Inglis v. Trus- .tees, 3 Pet. 99; Ould v. Washington Hospital, supra.

The complainants rely upon Jocelyn v. Nott, 44 Conn. 55, which they think states a different rule. In that case two pieces of real estate were devised to trustees to be conveyed to an ecclesiastical .society of the Congregational faith, if application should be made by said society to erect a church on one of the two pieces, and the

society should, in the opinion of the trustees, be able to build and complete the church, and be free from debt. Meanwhile, until such conveyance, the house upon ·one of the parcels could be occupied by named individuals, rent free. No application was ever made for the benefit of the trust provision, and the opinion declares that it is not probable that one will ever be made. The trustee had no funds with which to repair, or pay taxes, which, amounting to more than $1,500, were overdue. A part of the house was not in a condition to rent. The devise was held to be void. The time when the estate should vest for charitable purposes depended upon the existence of a state of facts which would, in all probability, never occur. Meanwhile, a third person and his family had a right to occupy a part of the house rent free. The state of the property showed the result of the incapacity of the trustee to use or to convey. In this case no condition or estate intervenes between the estate of the trustees and the enjoyment of the charitable use, except the necessity of an accumulation of income for 10 years. The differences between the two cases are vital. The facts in the other Connecticut cases upon the subject of perpetuities do not relate to an accumulation of all the income, but the decisions with great uniformity protect estates for charitable uses, and show that the position of the courts of the state is in entire accord with the rule in Russell v. Allen. Woodruff v. Marsh, 63 Conn. 125, 26 Atl. 846; Storrs Agricultural School v. Whitney, 54 Conn. 342, 8 Atl. 141. The cases in the courts of England and of this country which relate to the validity of provisions in bequests for charitable uses relating to the accumulation of the entire income before the beneficial enjoyment of the charity commences are somewhat infrequent. The subject was considered with care by the supreme court of Massachusetts, which spoke through Judge Gray, in Odell v. Odell, 10 Allen, 1. The court declined to state what was the legal limit of accumulation for a charity, but held that a bequest to trustees of an annual sum of $100 from real estate for 50 years, to be invested by the trustees during that time, and at its expiration the accumulated sum "to be appropriated" by a charitable society, was a valid bequest, even if the accumulation could not be allowed for so long a period. In Magistrates of Dundee v. Morris, 3 Macq. 134, the subject of the validity of provisions for accumulation before the charity is established was considered favorably to such provisions, and a previous decision by the house of lords in Ewen v. Bannerman, 2 Dow & C. 74, against the validity of a provision of that character was declared by Lords Chelmsford and Wensleydale to be unsatisfactory. The case of Chamberlayne v. Brockett, 8 Ch. App. 206, is to the effect that this class of provisions in bequests of an absolute gift for charitable uses will not be permitted to disturb the validity of the gift. The position of courts of equity in regard to accumulations of the income of charitable gifts is the same as that which has been stated in regard to the principal of such gifts. Courts which are not controlled by a statute upon the subject of remoteness will protect the accumulation of income for charitable uses within reasonable limits, although the limits exceed the strict rule of perpetuities. In this case, an absolute gift of property, said to be about

$20,000, was made to trustees, with directions to accumulate the income for 10 years, and a permission to them to enlarge that time. It is possible that they will use their discretion to an extent which will not be satisfactory to the people who may become interested in the establishment of the charities, but a plainly indiscreet exercise of their discretion is within the control of a court of equity, and would be corrected. Story, Eq. Jur. § 1191. We are of opinion that the permission to the trustees to exceed 10 years in the accumulation of income, the gift of the principal being an absolute and unconditional gift to charity, does not make the provisions of the residuary clause void for remoteness. We have not considered the effect of the provision in regard to accumulation, if it had been found to be excessive, upon the validity of the gift of the principal. Chamberlayne v. Brockett, supra; City of Philadelphia v. Girard's Heirs, 45 Pa. St. 9; Gray, Perp. § 678.

It is next claimed by the complainants that the residuary clause is void by reason of its indefiniteness in regard to the charities, or the persons to be selected. The charities to be established are a library and a Roman Catholic protectory, or asylum, for boys, each of which is a public charity. There is a manifest distinction between the definiteness required in a charitable bequest for the benefit or relief of particular individuals, such as "indigent students," or "poor persons," and in a gift to a public charity for a library, or a hospital, or an asylum. In the latter case the selection of the persons to be benefited is from a very large class, and is to be made under general rules established by the managers of the public charity, and minuteness by the testator in regard to the manner in which the library or the asylum was to be used would probably paralyze the usefulness of each. In this case the charities are of a well-known and widely-spread character. The trustees are to manage and appropriate the principal and income, and, as a matter of course, are to make the rules by which each charity is to be governed. A like objection in regard to the indefiniteness of a gift of land for a hospital for foundlings was regarded in Ould v. Washington Hospital, supra, as without force, and other cases on the subject to the same effect are abundant. Russell v. Allen, supra; Woodruff v. Marsh, supra. The decree of the circuit court is affirmed, with costs of this court.

LACOMBE, Circuit Judge. I entirely concur in the opinion of the majority, but think it was unnecessary to enter upon so exhaustive a discussion of the questions presented, since it is the duty of federal courts, when construing a will, to administer the law of the particular state where the property affected is located and the trusts created. The reported decisions of the courts of Connecticut clearly indicate how this case would be decided if brought before them. Indeed, it seems quite apparent that complainants adopted the extraordinary and somewhat questionable course of suing in the federal court only because they were advised that their contentions would be disposed of adversely in the state tribunals.