BOK et al. v. McCAUGHN, Collector of Internal Revenue.

No. 4292.

Circuit Court of Appeals, Third Circuit.

July 21, 1930.

Owen J. Roberts and Weill, Blakely & Nesbit, all of Philadelphia, Pa., for appellants.

Calvin S. Boyer, U. S. Atty., and Mark Thatcher, Asst. U. S. Atty., both of Philadelphia, Pa. (C. M. Charest, Gen. Counsel Bureau of Internal Revenue, and Thomas H.

Lewis, Jr., and E. J. Dowd, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., of counsel), for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and JOHNSON, District Judge.

BUFFINGTON, Circuit Judge.

On July 1, 1921, Edward Bok, by indenture signed by himself as founder, by certain others as trustees and by the Girard Trust Company, as depository, transferred securities owned by himself aggregating $210,000, and increased by subsequent amounts. The instrument provided as follows:

"Whereas the Founder believes that service to others tends to make lives happy and communities prosperous and that the ideal of service as a test of good citizenship should be kept constantly before the minds of the people of Philadelphia in general and of the young in particular; and further believes that this may by some measure be accomplished through the making, under proper conditions of an annual award in recognition of some service rendered by a Philadelphian which shall have redounded to the good of the City."

It gave the fund absolutely and in perpetuity on certain trusts, which, as far as here pertinent, were:

"I. After the ending of each calendar year they shall determine what resident of Philadelphia or its suburbs or vicinity has during said year done an act or rendered a service of such advantage to the City or to its inhabitants as to be eminently worthy of public recognition and reward.

"II. When the Trustees shall have determined the person who has thus deserved best of the City they shall announce that such person has been selected to receive the Philadelphia Award for the preceding year and shall proceed with appropriate dignity and ceremony, in the American Academy of Music or in some other suitable place, to confer the Award upon the person so selected.

"III. The ceremony of conferring the Philadelphia Award shall include the making of the payment of $10,000 to the person selected to receive it and the delivery of a suitable certificate or other permanent record or symbol of distinction.

"IV. The nature of the act or service for which the Award may be made is not to be determined by a strict interpretation of the language of this instrument. The language is to be regarded by the Trustees rather as indicating the spirit in which the Award is to be made than as imposing limitations upon their discretion in making it.

"V. In case the Trustees shall determine that in the preceding year no act or service worthy of the Award has been done, or rendered, they shall have the right to apply the said $10,000 of the net income of the trust fund for that year to or toward free scholarships for boys and girls resident in Philadelphia, its suburbs or vicinity; such scholarships to be divided at the discretion of the Trustees among the following institutions:

"University of Pennsylvania,

"The Pennsylvania Museum and School of Industrial Art,

"The Jefferson Medical College of Philadelphia,

"Bryn Mawr College,

"Pennsylvania Academy of The Fine Arts,

"The Settlement Music School,

"The Drexel Institute,

"The National Farm School,

"Pennsylvania School of Horticulture for Women. * * *

"Eleventh: In case at any time hereafter the Trustees shall deem that the execution of the general spirit and intent hereof has become impracticable, the trust shall not wholly fail; but the trust fund shall thereupon become subject to the jurisdiction of a court of equity to be disposed of and administered cy pres."

In his income return for 1921, Mr. Bok claimed a deduction by virtue of that section of the Revenue Act of 1921 which provides: "That in computing net income there shall be allowed as deductions: * * * gifts made within the taxable year to or for the use of * * * any corporation, or * * * fund, or foundation, organized and operated exclusively for * * * charitable * * * or educational purposes * * * no part of the net earnings of which inures to the benefit of any private stockholder or individual" (section 214(a) (11), 42 Stat. 241), and "that when used in this Act * * * the term 'corporation' includes associations" (section 2 [42 Stat. 227]). The taxing authorities denied this claim and over the taxpayer's protest collected the tax. Thereupon the taxpayer brought this suit. On trial the court below sustained the government's contention and entered judgment in its favor. Thereafter this appeal was taken.

Was Mr. Bok entitled to the exemption of the statute? That depends on the answer to those questions: First, were the transfers by Mr. Bok, in the words of the statute, "gifts"? There can be no doubt on that point. They were absolute, voluntary, and without consideration moving, and no provision was made for a return to him in case of lapse. In the words of the indenture, Mr. Bok "does assign, transfer and set over unto the Trustees and their successors the securities set forth * * * to be held in perpetuity", etc. Second, were they "gifts made within the taxable year"? Unquestionably so. The gift became effective at once by transfer and delivery. Everything to make the gift absolute was done during 1921. Third, was the gift, in the words of the statute, made "to or for the use of * * * any corporation * * * or foundation"? The statute defines the scope and meaning of corporation, viz.: "The term 'corporation' includes associations," and, taking the dictionary definition of an association as a "union of persons in a company * * * for some particular purpose," we are of opinion that Congress by this comprehensive and inclusive word meant to include unincorporated bodies constituted by the association of men to carry on some common, charitable, or educational purpose. In the present case the trustees of the foundation created by the indenture were so associated in order to carry out the common purpose therein expressed, to wit, the recognition and reward each year of a resident of Philadelphia who has "during said year done an act or rendered a service of such advantage to the City or to its inhabitants as to be eminently worthy of public recognition of reward." This was done in furtherance of the purpose of the founder thereto moving him in creating the foundation, to wit: "Whereas the Founder believes that service to others tends to make lives happy and communities prosperous and the ideal of service as a test of good citizenship should be kept constantly before the minds of the people of Philadelphia in general and of the young in particular." It will be noted also that in certain contingencies clause V above quoted provided that the whole income could be used for purely educational purposes. And not only do the trustees constitute an association within the meaning of the statute, but this trust is a "foundation" in the accepted sense of that term. See Sutton's Hospital, Coke's Reports (1613). There is no force in the objection that the statute gives exemption only in the case of a gift to an existing foundation and not to a gift which itself creates a foundation, for such a distinction would defeat the obvious purpose of Congress to encourage gifts of the class under consideration. It will, moreover, be noted that (as explained by Lord Coke in his report of the case last cited) there has been from time immemorial a recognized distinction in English law between fundatio incipiens, or the mere creation of the body capable of accepting the trust, and fundatio perficiens, which is the making of the donation to the body capable of accepting it. To constitute, as Mr. Bok did, a body of trustees for the purpose which he had in mind was to create a foundation, and his accompanying transfer to the trustees of his securities was a gift to a foundation within the meaning of the statute. A court may properly take judicial notice of the public acts of the trustees in conferring awards pursuant to the terms of the deed of gift. These awards have included the recognition of the service rendered to public education in music by the leader of the Philadelphia Orchestra;[1] the crowning of one who labored faithfully to bring within reach of the masses opportunities for higher education;[2] the rewarding of the patriotic work of the clergyman who had labored to make Valley Forge the recognized shrine of American patriotism;[3] the honoring of a distinguished surgeon for conspicuous services in the relief of human suffering;[4] the recognition of a humble emigrant whose work in the fabrication of metal has made him a pioneer in reviving the spirit which in medieval times animated craftsmen of the old world;[5] and the appreciation of a citizen whose work in connection with art, city planning, and the great art museum earned for him the recognition of the foundation.[6]

It remains then to inquire whether the foundation is "organized and operated exclusively for * * * charitable or educational * * * purposes, * * *" for, if so, undoubtedly the foundation meets the other test, viz., "No part of the net earnings of which inures to the benefit of any private stockholder or individual."

Charity, derived from the Latin caritas, originally meant love. In the thirteenth chapter of first Corinthians the revised ver-

---

[1] Leopold Stokowski.

[2] Russell Conwell.

[3] W. Herbert Burk.

[4] Chevalier Jackson.

[5] Samuel Yellin.

[6] Eli Kirk Price.

sion uses the word "love" in defining the third of the three cardinal virtues, which, in King James' version read "Faith, Hope and Charity." It was with similar emphasis on the motive which prompts action that Mr. Binney framed his approved definition of a charitable trust in his argument in the Girard will case: "Whatever is given for the love of God, or the love of your neighbor, in the catholic and universal sense, given from these motives and to these ends, free from the stain or taint of every consideration that is personal, private, or selfish." Vidal v. Girard's Executors, 2 How. 128, 11 L. Ed. 205 (1844) which is quoted by the Supreme Court in Ould v. Washington Hospital, 95 U. S. 311, 24 L. Ed. 450. Charity means such unselfish things as are wont to be done by those who are animated by the virtue of love. Thus the Supreme Court of the United States, following Chancellor Kent, Lord Lyndhurst, and Lord Camden, has defined a charitable trust as "a gift to a general public use which extends to the poor as well as to the rich." Perin v. Carey, 24 How. 506, 16 L. Ed. 701 (1860). So, also, Mr. Justice Gray speaking for the Supreme Court of Massachusetts in Jackson v. Phillips, 14 Allen 556 (1867), declared a charitable gift to be one "for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government."

It cannot be doubted that Mr. Bok's gift was a charitable gift as the word "charitable" is used and understood by courts and law-making bodies. What he did was done for the love of his neighbors in the community which he had adopted as his home. Every activity recognized by the awards that have been made is an activity for the promotion of which a charitable trust might be created. A trust for popular education in music, or for making higher education accessible to the many, or for stimulating American patriotism by recalling the unselfish sacrifices of the fathers, or for the relief of human suffering through new and improved surgical methods, or for the encouragement of craftsmanship, or for the beautification of a city, would be a charitable trust tested by any of the definitions which the authorities supply. And if a trust for the promotion of any one of these interests would be a charitable trust, it follows that a foundation to promote all of them is a trust that partakes of the nature of each. The making of an award to the citizen who renders conspicuous service in any field is one way (and an impressive one) to hold up that particular activity as an object of honorable effort and to encourage the many to follow in the train of the one thus conspicuously honored. Manifestly it was within the purpose of Congress, in granting this exemption, to encourage men and women to follow the examples of those whose well doing has made them the lights of the world in their several generations. In our judgment this court is giving effect to the intent of Congress when it holds, as we now do, that the disinterested gift of Mr. Bok for the good of his neighbors and for the promotion of interests technically charitable and really educational is entitled as such to the exemption Congress meant to give.

The judgment below will therefore be vacated and the record remanded for further proceedings in accordance with this opinion.